# United States Court of Appeals
### For the Eighth Circuit
_____

No. 11-3547
_____

United States of America

*Plaintiff - Appellant*

v.

Alexander Martinez, also known as Lex Martinez

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 13, 2012
Filed: August 31, 2012

_____

Before LOKEN and GRUENDER, Circuit Judges, and PERRY,[1] District Judge.

_____

GRUENDER, Circuit Judge.

A jury found Alexander Martinez guilty of conspiring to commit bank fraud in violation of 18 U.S.C. § 1349, committing bank fraud in violation of 18 U.S.C. § 1344, and making a false statement to a financial institution in violation of 18 U.S.C.

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

§ 1014. The district court[2] sentenced Martinez to twelve months and one day of imprisonment and did not order restitution. The Government now appeals the district court's decisions to use Martinez's gain, instead of the actual or intended loss, for purposes of calculating the advisory sentencing guidelines range and to not order Martinez to pay restitution. For the reasons that follow, we affirm.

I.   BACKGROUND

Martinez was the chief financial officer and manager of the accounting department at Affiliated Foods Southwest, Inc. ("Affiliated"), a food distribution company. Affiliated had a multi-million dollar line of credit with U.S. Bank collateralized by Affiliated's accounts receivable and inventory. U.S. Bank determined the amount that Affiliated could borrow based on the amount of eligible collateral Affiliated possessed. In 2008, Affiliated began struggling with cash-flow issues. In order for Affiliated to obtain additional funds from U.S. Bank on the line of credit, Martinez used various nefarious methods to enhance the apparent financial status of Affiliated. One such method was to instruct employees at subsidiaries of Affiliated to write checks to Affiliated even though the money paid to Affiliated by the subsidiaries would ultimately be provided by Affiliated. The Government characterizes this method of fraud as a check-kiting scheme.

At the time U.S. Bank discovered the fraud in February 2009, Affiliated owed U.S. Bank in excess of $55 million. U.S. Bank froze the line of credit temporarily to determine the actual status of the collateral. U.S. Bank then entered into a forbearance agreement with Affiliated Foods under which U.S. Bank continued to lend money but required Affiliated Foods to hire a "turnaround consultant." During this period, Affiliated Foods continued to operate.

---

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

Affiliated eventually filed for bankruptcy in May 2009, at which time it owed U.S. Bank a little over $28 million. Between that time and Martinez's sentencing, U.S. Bank was able to recover from collateral all but approximately $2.8 million of the principal it was owed by Affiliated. For sentencing purposes, the Presentence Investigation Report used the $2.8 million of unrecovered principal as the amount of loss for which Martinez was responsible. The Government argued, however, that Affiliated obtained approximately $11.6 million in extra loans from U.S. Bank as a result of Martinez's fraudulent activity and that this amount was the intended loss for which Martinez was responsible. In contrast, Martinez argued that U.S. Bank's loss was not caused by his fraud and that, in any event, U.S. Bank had additional collateral available that he claimed was sufficient to cover the $2.8 million in unrecovered principal. The district court concluded that it did not have a reasonable basis on which to determine the actual or intended loss. Therefore, for purposes of determining the advisory sentencing guidelines range, the district court used as an alternative loss measurement the gain to Martinez from his fraudulent activities—that is, the $48,000 in salary payments he received during the period of the scheme.

At sentencing, the Government also sought an order of restitution for the approximately $2.8 million of unrecovered principal plus about $2.3 million in interest. Martinez argued that, because outstanding collateral was sufficient to satisfy the amount Affiliated owed U.S. Bank, restitution should not be awarded. The Government countered that U.S. Bank's prior efforts to collect on various collateralized accounts receivable of Affiliated had resulted in a recovery of only a portion of the amounts owed and that it had been unable to obtain any sizeable amount of funds from the remaining accounts in recent months. The district court, due to the complexity of determining the loss to U.S. Bank properly attributable to Martinez's fraudulent behavior, declined to order any restitution.

On appeal, the Government argues that $11.6 million is the proper loss amount for purposes of the sentencing guidelines or that, in the alternative, the court should

use the outstanding $2.8 million of principal as the loss amount. In addition, the Government contends that restitution should be awarded to U.S. Bank.

## II. DISCUSSION

### A. Amount of Loss

"We review a district court's interpretation of the guidelines de novo and its loss calculation for clear error." *United States v. Mancini*, 624 F.3d 879, 881 (8th Cir. 2010). "We will affirm the court's loss determination 'unless it is not supported by substantial evidence, was based on an erroneous view of the law, or [we have] a firm conviction that there was a mistake after reviewing the entire record.'" *Id.* (alteration in original) (quoting *United States v. Hodge*, 588 F.3d 970, 973 (8th Cir. 2009)). "Because the damage wrought by fraud is sometimes difficult to calculate, a district court is charged only with reasonably estimating the loss using a preponderance of evidence standard." *United States v. Alexander*, 679 F.3d 721, 731 (8th Cir. 2012) (quoting *United States v. McKanry*, 628 F.3d 1010, 1019 (8th Cir.), *cert. denied*, 563 U.S. ---, 131 S. Ct. 1837 (2011)).

The advisory sentencing guidelines provide for the application of graduated offense levels based on the amount of loss involved in specified crimes. *See* U.S.S.G. § 2B1.1(b)(1). "Under the guidelines, the general rule is that 'loss is the greater of actual or intended loss.'" *United States v. Mitchell*, 608 F.3d 384, 387 (8th Cir. 2010) (quoting U.S.S.G. § 2B1.1 cmt. n.3(A)). A district "court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." U.S.S.G. § 2B1.1 cmt. n.3(B). The Government contends that the actual or intended loss was identifiable and that therefore the district court should not have used the gain to the defendant as an alternate measure of loss.

It appears that the district court's loss analysis focused on actual loss and that the district court concluded that it could not reasonably determine the amount of actual loss primarily because: (1) it was unsure if the loss to U.S. Bank resulted from Martinez's actions and, alternatively, (2) it could not reasonably determine the value of the outstanding collateral. We affirm based on the district court's second alternative, as it applies to both actual and intended loss. *See United States v. Staples*, 410 F.3d 484, 491 (8th Cir. 2005) ("[S]entencing courts should subtract the value of the collateral from the intended loss amount when the facts warrant it.").

We first consider whether the value of the collateral pledged to U.S. Bank prior to the detection of the fraud is a proper consideration in determining actual or intended loss. The Government analogizes Martinez's conduct to a check-kiting scheme and argues, relying on *United States v. Whitehead*, 176 F.3d 1030 (8th Cir. 1999), that the amount of actual loss must be determined based on the amount in float "at the time the check kiting scheme is discovered, not at the time of sentencing," rendering the existence of any collateral irrelevant. 176 F.3d at 1042. *Whitehead*, however, does not stand for the proposition that collateral can never be considered in determining the amount of loss in a check-kiting case; it involved a voluntary promise of payment by the defendant after the scheme was discovered, rather than the presence of collateral that had been pledged prior to the scheme's discovery. Moreover, we believe Martinez's fraud here is more akin to a scheme to inflate assets or income in a loan application to obtain a loan in an amount greater than that justified by the actual financial condition, rather than a traditional check-kiting scheme. *See Alexander*, 679 F.3d at 729-30 ("In mortgage fraud cases, we have previously approved loss amount determinations based on the difference between the unpaid principal balance of a mortgaged property and the subsequent sale price of the property."). Thus, we conclude that the district court did not err by taking into account the collateral available to U.S. Bank in deciding whether it reasonably could determine the amount of loss. *See* U.S.S.G. § 2B1.1 cmt. n.3(E)(ii) (stating that "[i]n a case involving collateral pledged or otherwise provided by the defendant," the amount of loss shall

-5-

be reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral, *or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing*" (emphasis added)); *United States v. Parish*, 565 F.3d 528 (8th Cir. 2009) ("Pursuant to U.S.S.G. § 2B1.1, the equation used to calculate actual loss to the lenders is the amount of the fraudulently obtained mortgage loans minus any payments made on the loan principal and the value of the collateral at the time of sentencing."); *United States v. Oligmueller*, 198 F.3d 669, 671 (8th Cir. 1999) (concluding, in a case in which the defendant secured a loan by misrepresenting the number of cattle he owned, that "in determining the amount of actual loss, a sentencing court is not permitted to consider payments made to the bank after the fraud is discovered unless the payments are the result of the sale of pledged assets").

Having concluded that the value of the collateral pledged to U.S. Bank prior to the detection of the fraud properly would be included in calculating actual or intended loss, we next consider whether the district court could reasonably determine the fair market value of the outstanding collateral at the time of sentencing. The district court heard testimony relating to U.S. Bank's efforts to collect on Affiliated's collateralized accounts receivable and the likelihood that U.S. Bank would be able to reduce or eliminate its loss through future collection efforts. The Government failed, however, to provide a satisfactory basis for estimating the fair market value of the outstanding collateral. Although a U.S. Bank employee testified that recent collection efforts had become less fruitful, she provided no estimate of, or reasoned basis to determine, the amount of outstanding collateral that might be collected. We cannot say that the district court clearly erred in holding that it could not reasonably determine the fair market value of the outstanding collateral. *See United States v. Huber*, 462 F.3d 945, 951 (8th Cir. 2006) (stating that "the district court's decision about whether the total amount of loss in the case was practicable to determine [for purposes of U.S.S.G. § 2S1.1(a)(1)] was a factual issue for the district court"). Because the district court was required to reduce the amount of actual or intended loss by the fair market value

of the outstanding collateral, it could not reasonably determine the loss under either of those methods. *See* U.S.S.G. § 2B1.1 cmt. n.3(B). We therefore affirm the district court's decision to use Martinez's gain for purposes of determining the advisory guidelines range. *See id.*[3]

### B.  Restitution Award

We review a "district court's decision to order restitution for abuse of discretion and its underlying fact determinations for clear error." *United States v. Gregoire*, 638 F.3d 962, 973 (8th Cir. 2011). "To the extent the district court interpreted the Mandatory Victims Restitution Act (MVRA) to determine its obligations in awarding restitution, we review those interpretations de novo." *United States v. Frazier*, 651 F.3d 899, 903 (8th Cir. 2011). When applicable, the MVRA provides that "a sentencing court 'shall order . . . the defendant [to] make restitution to the victim of the offense.'" *Frazier*, 651 F.3d at 903 (omission and alteration in original) (quoting 18 U.S.C. § 3663A(a)(1)). "While the amount of loss calculation looks to the greater of actual or intended loss, the amount of restitution under the MVRA 'cannot exceed the actual, provable loss realized by the victims.'" *Alexander*, 679 F.3d at 731 (quoting *Frazier*, 651 F.3d at 905). "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." *Frazier*, 651 F.3d at 903.

In declining to order restitution, the district court relied on a provision of the MVRA stating that mandatory restitution is not required for property offenses where the district court finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to

---

[3]We also reject the Government's additional arguments that, even if collateral is properly considered, Martinez's scheme did not create any collateral and that Martinez should get no credit for the collateral supplied by Affiliated.

a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). The district court invoked this exception due to the complexity of determining the amount of loss properly attributable to Martinez. The Government argues that the district court improperly relied on § 3663A(c)(3)(B).

We have stated in applying § 3663A(c)(3)(B) that "a burdensome, complicated, or speculative calculation provides a good reason for the district court to decline to exercise its discretion." *See United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006). The Second Circuit has explained that § 3663A(c)(3)(B) "reflects Congress's intent that 'sentencing courts not become embroiled in intricate issues of proof,' and that the 'process of determining an appropriate order of restitution be streamlined.'" *United States v. Marino*, 654 F.3d 310, 317 (2d Cir. 2011) (quoting *United States v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006)). Here, the district court found that Affiliated was going out of business regardless of Martinez's fraud and that U.S. Bank would have had the same difficulty recovering funds lent to Affiliated absent the fraud. Indeed, the district court stated that, absent the fraud, "I'm not sure that [U.S. Bank] could have come out any better than they came out. It's like [Martinez] almost kept the business going" with his scheme. The district court stated that it would be necessary to subpoena numerous additional witnesses in order to determine what amount of the unrecovered loan proceeds were attributable to the fraud. Given the district court's concerns about the complexity of determining the extent of loss properly attributable to Martinez's scheme, we cannot say that the district court abused its discretion by declining to order restitution.

### III. CONCLUSION

For the foregoing reasons, we affirm.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 31, 2012

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE: 11-3547  United States v. Alexander Martinez

Dear Sirs:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellant was Karen Whatley, USA, of Little Rock, AR.

  Counsel who presented argument on behalf of the appellee was Robert William Francis, of Little Rock, AR. Also appearing on the brief for appellee was Charles A. Banks, Of Little Rock, AR.

  The judge who heard the case in the district court was Honorable Brian S. Miller. The judgment of the district court was entered on October 19, 2011.

  If you have any questions concerning this case, please call this office.

           Michael E. Gans
           Clerk of Court

SRD

Enclosure(s)

cc: Lois Law
   MO Lawyers Weekly

    District Court/Agency Case Number(s):  4:10-cr-00044-BSM-1

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 31, 2012

Ms. Karen Whatley
U.S. ATTORNEY'S OFFICE
Eastern District of Arkansas
P.O. Box 1229
Little Rock, AR  72203-0000

     RE:  11-3547  United States v. Alexander Martinez

Dear Counsel:

     The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00a.m. today. Please hold the opinion in confidence until that time.

     Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

     Michael E. Gans
     Clerk of Court

SRD

Enclosure(s)

cc:    Mr. Charles A. Banks
       Mr. Robert William Francis
       Mr. Alexander Martinez
       Mr. Jim McCormack

     District Court/Agency Case Number(s):   4:10-cr-00044-BSM-1



11-3547 United States v. Alexander Martinez "Signed Opinion Filed" (4:10-cr-00044-BSM-1)
8cc-cmecf-nda  to:                                              08/31/2012 09:35 AM

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 08/31/2012

**Case Name:**      United States v. Alexander Martinez
**Case Number:**    11-3547
**Document(s):**    Document(s)

**Docket Text:**
OPINION FILED - THE COURT: James B. Loken, Raymond W. Gruender and Catherine D. Perry
AUTHORING JUDGE:Raymond W. Gruender (PUBLISHED) [3948579] [11-3547] (Susan Duenow)

**Notice will be electronically mailed to:**

Mr. Charles A. Banks: cbanks@bankslawfirm.us
Mr. Robert William Francis: rfrancis@bankslawfirm.us
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Ms. Karen Whatley, Assistant U.S. Attorney: karen.whatley@usdoj.gov, Colleen.Dubose@usdoj.gov
Lois Law: FED08@loislaw.com
MO Lawyers Weekly: stephanie.maniscalco@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com

**Notice will be mailed to:**

Mr. Alexander Martinez
7509 Union Square
Benton, AR 72019

The following document(s) are associated with this transaction:
**Document Description:** opinion
**Original Filename:** 113547P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=08/31/2012] [FileNumber=3948579-0]
[96671b8ac176ee971cadb35d980e88de1228b42264ea7ad31e11eeb1062621d36fe43fe36db2d35
8730cf90e4b836da0e57f8ecb27972f878304d56531aa2666]]

**Document Description:** Letter To Publishing
**Original Filename:**
/opt/ACECF/live/forms/sduenow_113547_3948579_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=08/31/2012] [FileNumber=3948579-1]
[5f6ee379d8fb5c21c8f03cc36c7fec273f43e096594778b45b63094ddd4f747b7f2444daed0369acd
1b918feb1f58411db846b7b8e73cdcc6e30b2757be3d89d]]
**Recipients:**
- Lois Law
- MO Lawyers Weekly
- West Publishing

**Document Description:** Counsel Opinion Letter
**Original Filename:**
/opt/ACECF/live/forms/sduenow_113547_3948579_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=08/31/2012] [FileNumber=3948579-2]
[4e5907404b10683bc64f04773c122b97f0b38e3ad18ce3e2dce6f9ad0eebd71383c963b613d3602
781a65ba12af0e0118e2921fa90c70f2799a77984928e86c8]]
**Recipients:**
- Mr. Charles A. Banks
- Mr. Robert William Francis
- Mr. Alexander Martinez
- Mr. Jim McCormack, Clerk of Court
- Ms. Karen Whatley, Assistant U.S. Attorney

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 3948579
**RELIEF(S) DOCKETED:**
  for publication
**DOCKET PART(S) ADDED:** 4686580, 4686581, 4686582